## TITLE TO INTEREST IN LAND BELONGING TO HEIR WHO DISAPPEARED.

Circuit Court of Monroe County.

WARD V. WARD ET AL.

Decided, November Term, 1907.

*Co-Tenancy—Title—Interest in Share of Co-parcener · Believed to be Dead—Quit-Claimed Before Expiration of Seven Years—Operation of a Deed According to Its Intent—Possession—Improvements—Estoppel—Partition—Descent—Statute of Limitations.*

Where a tenant in common releases for a valuable consideration to a co-tenant by quit-claim deed all his right, title and interest in certain land therein described, expressly including the interest inherited by him from a brother, then believed to be dead; and where also the grantee goes into actual possession of the land upon which he and his heirs make valuable improvements and continue in peaceable possession thereof for more than twenty-one years, such grantee and his heirs acquire a good title to such interest as against the grantor and his heirs although the brother was not dead at the time of the execution of the deed of release.

*Mallory, Jeffers & Sears,* for plaintiff.
*Tallman & Spriggs* and *Jennings & Walton,* contra.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Moses Ward, the grandfather of plaintiff, Cyrus A. Ward, died intestate May 25th, 1861, leaving eight children his heirs at law, two of whom were named Seth and Stephen. There was another son by the name of George Washington Ward.

George Washington, then a young man unmarried, left home some time in 1854 to 1856 and has not been heard of since. At the time of his death Moses Ward was the owner of a farm in this county. On the 16th day of April, 1862, Seth Ward purchased the interest of his brother, Stephen, in the farm, as he also did from all the other six of his brothers and sisters, taking separate quit-claim deeds from each, similar in form. The purchase price and consideration expressed in the deed of Stephen was $400, which was its fair value. The deed to Seth from Stephen contained this clause: "And this instrument it is understood and agreed conveys any interest that he may have of George Washington Ward's, whom it is believed is dead." The language in the petition is "presumed to be dead," instead of "believed to be dead"; but that it immaterial.

Seth Ward immediately upon securing these deeds in 1862 went into the actual possession of the farm and made valuable improvements upon the same and he and his children have been in the possession of the same ever since. In 1906, forty-four years after the making of the deed, some of the heirs of Stephen Ward gave out in divers conversations that they were entitled to an interest in said farm as nephews of George Washington Ward, for the reason that their father, who was deceased, had no power to convey to his brother, Seth Ward, by quit-claim deed the interest of George Washington Ward, the deed being made before the expiration of seven years from the date of the departure of George Washington Ward, Stephen Ward then having but a mere possibility which was not the subject of release. 4th Kent's Com., 206.

Cyrus A. Ward, a son of Seth Ward, who was then principally interested in the farm, upon hearing of this claim of the heirs of Stephen Ward, commenced an action against George Washington Ward and all parties claiming under Moses Ward, the grandfather of plaintiff and defendants, and under George Washington Ward, to quiet his title.

Plaintiff in his petition and the contesting defendants in their answer all aver that George Washington Ward had not been heard of for nearly fifty years and was presumed to be dead. George Washington Ward was sought to be brought into

court by service of summons by publication but this could not be done, and no decree can be taken against him, as all the parties rely upon his death before the commencement of the action. *Young* v. *Heffner*, 36 O. S., page 232.

Judge Boyston on page 237 says:

"The plaintiff was not, and from the nature of the case could not have been a party to the proceedings for partition instituted by two of his brothers in 1863, as those proceedings and rights therein asserted were founded and for their validity depended on the assumption of his death. The alleged title or interest of his brothers and sisters, which was purchased by defendant Heffner, rested wholly on the presumption that the plaintiff was dead, such presumption being founded on the fact that the plaintiff had been absent and unheard of, for the period of seven years."

This disposes of the case as to George Washington Ward. His absence is only *prima facie* evidence of his death, and upon it being shown that he is alive his rights in the property may be asserted at any time. In the case referred to it is held:

"The presumption of death which arises from the absence of one from his home for the period of seven years, and who in the meantime is not heard of is but *prima facie* evidence of the fact and may be rebutted by counter proof."

The only question, therefore, is between the plaintiff, the son of Seth Ward, and the contesting defendants, the sons of Stephen Ward.

The claim of defendants is that at the time Seth bought the interest of Stephen, and the quit-claim deed was executed, George Washington Ward had not been gone from his home and unheard of for seven years, and that therefore, as before said, the interest of Stephen was a naked or remote possibility, and not the subject of release. Much reliance is placed upon the case of *Needles, Executor,* v. *Needles, et al,* 7 O. S., 432, but we do not think that case is applicable to this case. In that case the son simply gave a receipt in consideration of an advancement made by the father that the advancement was to be in full of all claims he might have against his father's estate after his death as one of his heirs, and it was held that such agreement imposed no obligation for the obvious reason, that

an executory contract could not be made to control the distribution of the father's estate after his death.

This case is entirely different. Stephen sold to Seth for a valuable consideration all the interest he might have of "George Washington Ward, who is presumed to be dead." Stephen claimed to be the owner of the interest of George Washington Ward and so sold it and gave a deed for such interest, practically setting forth that he was the owner of the interest.

True it was a quit-claim deed containing no covenants; simply a deed of release; but we think that makes no difference, and that by such sale and deed Stephen and those claiming under him are now estopped from making any claim to such interest as against the heirs of Seth. Such we understand to be the holding in the case of *Magruder* v. *Esmay*, 35 O. S., page 221. It is there held:

"A patent issued by the United States, in the name of one who had purchased the land, and made entry under the act of Congress of April 24, 1820 (3 U. S. Stat. at Large, 556), inures to the benefit of the grantee and his heirs and assigns, under a quit-claim deed executed· by the purchaser before the patent issued. The patent founded on such entry, relates back, and takes effect from the time the same was made."

In the opinion it is said:

"The plaintiff having succeeded to the title of Mrs. Farrell, and a legal estate being essential to the maintainance of the action, the question at once presents itself, whether the patent to Porter so far inured to the benefit of Mrs. Farrell as to vest in her a legal estate. Had the deed to Arnet been with warranty of title, there is no doubt, that on the receipt by Porter of the patent from the government, an estoppel would have arisen in favor of Mrs. Farrell. Nor is there any doubt that a party is estopped from denying the operation of a deed according to its intent, where, either by recital, admission, covenant, or otherwise, it appears that a certain estate was intended to be conveyed. Rawle on Covenants for Title, 338; Shepard's Touchstone, 82."

In the case of *VanRensselaer* v. *Kearney et al*, 11· Howard; 297, on pages 324 and 325 it is said:

"If the seizure or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between parties and privity."

We are not so sure from the evidence that George Washington Ward was known to be alive within seven years from the execution of the deed by Stephen to Seth; indeed we are of opinion that the strong tendency of the evidence is the other way; but whatever the evidence may show upon this question as we have seen makes no difference.

Again, is not the bar of the statute of limitations conclusive? The claim of defendants is that as these parties are all tenants in common the statute of limitations has no effect. This claim is not well founded in this case. If Seth were living he would have a right to rely on the bar of the statute, and his children have the same right. The deed was made in 1862, and Seth went into possession under the deed and made valuable improvements and paid taxes on the entire interest. This was an assertion of an independent absolute title under the deed as against Stephen and indeed against all the heirs of the grandfather, as he obtained like deeds from all of them. These deeds were placed upon record. It was a direct assertion of entire title and a public proclamation to all persons that he was such owner. He took the property under color of title at least; he went into possession under such title, and he and his heirs continued in such possession openly and adversely as against these claimed tenants in common for more than forty years. Taken altogether "it was an overt act of an unequivocal character clearly indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant." *Young v. Heffner,* 36 O. S., 232, *supra.*

Judgment in favor of plaintiff quieting his title at costs of contesting defendants, and same judgment may be entered in favor of defendants who are making same claim as plaintiff on their cross-petition.